Junerous COOK, Plaintiff–Appellant,

v.

CITY OF CHICAGO, Defendant–Appellee.

No. 98–3268.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1999.

Decided Sept. 20, 1999.

Philip C. Stahl (argued), Grippo & Elden, Chicago, IL, for Plaintiff–Appellant.

Brian L. Crowe, Office of Corporation Counsel, Appeals Division, Joshua D. Davidson (argued), Corporation Counsel, City of Chicago Law Department, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

In 1983, a consent decree was entered in a class action that had been brought against the City of Chicago complaining about the discharge of tenured City employees without due process of law. The decree gave a member of the class named Junerous Cook preference in future hiring for a job called "Director." Later that year Cook was notified in a letter from the City's personnel commissioner that there were no Director vacancies at present but that she would be notified as soon as one opened up. The letter gave her a number to call if she had any questions. At the time and indeed until recently she was employed in jobs that paid considerably less than a Director's job paid.

■ Vacancies in Directors' positions opened up in 1985 and 1986 but the City without excuse failed to notify her and gave the positions to other people. The next vacancy occurred in July 1989 and again the City without excuse failed to notify Cook and gave the job to someone else. Five years later counsel for the class informed her that she might have a claim against the City for violation of the consent decree; and the following year she filed a claim with the district judge who oversees the decree seeking backpay equal to the difference between the Director's salary and her actual salary since 1985. The City admitted that it had violated the consent decree by failing to notify Cook when a vacancy in the Director's position occurred, but it argued that Cook had failed to mitigate her damages because she had made no inquiry about vacancies between 1983, when the decree was entered, and 1994, when the lawyer for the class notified her that she might have a claim. The judge agreed with this argument and cut off Cook's backpay as of 1989 when the second vacancy occurred. He thus awarded her four years of backpay, since the City had failed to notify her of a vacancy that had opened up in 1985. Cook, seeking backpay for the additional ten years that have elapsed since the cut-off date fixed by the district judge, argues that the consent decree was a contract that entitled her to notice of a vacancy in a Director's position, that the breach of that contract entitled her to monetary relief equal to the difference between a Director's salary and her salary, and that under normal principles of contract law it is mitigation enough in a contract of employment case if the plaintiff held, as Cook did, a full-time job throughout the period for which she is

seeking compensation. An extraordinary feature of the consent decree is that it indeed appears to have given Cook a *lifetime* employment option.

■ From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy it is an equitable decree. See *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Ahern v. Board of Education*, 133 F.3d 975, 981 (7th Cir.1998); *United States v. International Brotherhood of Teamsters*, 141 F.3d 405, 408 (2d Cir.1998); *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir.1996). And so if it is violated the injured party must ask the court for an equitable remedy. *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75–76 (5th Cir.1993) (per curiam). The remedy might be a contempt judgment, as in *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947), or *United States v. Berg*, 20 F.3d 304, 311 (7th Cir.1994), but more commonly, and here, it is a supplementary order (preferred as less condemnatory than a judgment of contempt, cf. *Wisconsin Hospital Ass'n v. Reivitz*, 820 F.2d 863, 868 (7th Cir.1987), less likely therefore to be resisted) designed to make the party whole for his or her loss. *In re Barnes*, 969 F.2d 526, 527 (7th Cir.1992); *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 189 (8th Cir.1993); *In re Lafayette Radio Electronics Corp.*, 761 F.2d 84, 92–93 (2d Cir.1985). Even if compensatory in purpose and effect, it is, we emphasize, an *equitable* order, *United States v. Local 359*, 55 F.3d 64, 69 (2d Cir.1995), and therefore subject to the usual equitable defenses. See *Smith v. City of Chicago*, 769 F.2d 408, 414 (7th Cir.1985); *Bylinski v. City of Allen Park*, 169 F.3d 1001 (6th Cir.1999); *Harris v. City of Philadelphia*, 47 F.3d 1333, 1340–42 (3d Cir.1995); 1 Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution* § 2.4 (2d ed.1993).

■ One of these is the defense of laches, *id.*, § 2.4(4); *Smith v. City of Chicago, supra*, 769 F.2d at 414; *Bylinski v. City of Allen Park, supra*, that is, an unreasonable delay in pressing one's rights that prejudices the defendant. E.g., *Anderson v. Board of Regents*, 140 F.3d 704, 706–07 (7th Cir.1998); *United States v. Administrative Enterprises, Inc.*, 46 F.3d 670, 672 (7th Cir.1995); *Iglesias v. Mutual Life Ins. Co.*, 156 F.3d 237, 243 (1st Cir.1998); *Liddell v. Board of Education*, 142 F.3d 1103, 1106 (8th Cir.1998). Cook's claim arose in 1985, when the first vacancy in a Director's position occurred. She did not know about that vacancy; for that matter, she didn't know about the subsequent ones either. But the district judge thought that a reasonable person in Cook's position, if genuinely interested in a Director's job, would have inquired from time to time regarding vacancies rather than waiting year after year for more than a decade to be notified. In fact he thought she should have inquired within six years, rather than place the City in the unhappy position of having to pay in effect two salaries for one position (Cook's, and the salary of the person who filled the vacancy in 1989) indefinitely. *Zelazny v. Lyng*, 853 F.2d 540, 544 (7th Cir.1988); *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 342 (7th Cir.1982) (per curiam); *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 89 (9th Cir.1980). Indeed, in principle, Cook could have sought backpay to 1983 on her deathbed, given the lack of an expiration date for the employment option that the consent decree gave her.

■ It is possible to argue that since laches is the equitable substitute for the statute of limitations, and since statutes of limitations are designed to protect the defendant from prejudice caused by staleness of evidence, mere "economic" prejudice of the sort just described—having to pay a double salary—ought not to figure in a determination of laches. (*Cornetta v. United States*, 851 F.2d 1372, 1378–82 (Fed.Cir.1988), squarely holds that it ought

not, but only in the context of military pay disputes.) But this takes too narrow a view of the concerns behind statutes of limitations. The concern with error arising from deterioration of evidence is only one. Another is the cost to the defendant of uncertainty about his legal rights and duties. *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Bailey v. International Brotherhood of Boilermakers,* 175 F.3d 526, 531 (7th Cir.1999); *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1165 (7th Cir.1996); *Hamilton v. 1st Source Bank,* 928 F.2d 86, 89 (4th Cir. 1990) (en banc). "The dual purposes of a limitations period are to force parties to litigate claims while the evidence is still fresh, *and to grant the prospective defendant relative security and stability by allowing it better to estimate its outstanding legal obligations."* *Servicios–Expoarma, C.A. v. Industrial Maritime Carriers, Inc.,* 135 F.3d 984, 989 (5th Cir.1998) (emphasis added).

Despite the reference in the passage we just cited to the *dual* purposes of a limitations period, there is a third purpose, and that is to enable the defendant to cap his liability. Normally the size of a plaintiff's claim is, apart from any entitlement to prejudgment interest, independent of when suit is filed. But sometimes, notably in cases of wrongful discharge, it increases with the passage of time. As we said in *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir.1990), the statute of limitations is short "in most employment cases because delay in the bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements." Cook's delay in inquiring about a vacancy similarly ran up her employer's potential backpay liability, and this is the kind of palpable prejudice that, as the cases cited earlier teach, can justify a finding of laches. We grant that "it is difficult to see why delay that does not affect the accuracy of the fact-finding process should blot out *all* damages—the effect of granting summary judgment to the defendant—

as opposed to halting accrual when the plaintiff ought to have filed." *Herman v. City of Chicago,* 870 F.2d 400, 402 (7th Cir.1989) (emphasis added). But it did not blot out all damages here; it merely cut them off as of the date on which the plaintiff ought to have filed her claim. Laches, like the statute of limitations itself, often merely truncates a plaintiff's claim rather than barring it completely.

 Turning from generalities to specifics, we cannot say that the district judge's invocation of laches to truncate Cook's claim was unreasonable, given the circumstances of this case, and it is immaterial whether we think it correct, because our review is deferential. *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 181 (7th Cir. 1994); *Zelazny v. Lyng, supra,* 853 F.2d at 543 and n. 2; *Apache Survival Coalition v. United States,* 118 F.3d 663, 665 (9th Cir. 1997); *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1039 (Fed.Cir.1992) (en banc); cf. *Jones v. Lincoln Electric Co.,* 188 F.3d 709, 737 (7th Cir.1999); *Powers v. Chicago Transit Authority,* 890 F.2d 1355, 1361 (7th Cir.1989); *Harrison v. Metropolitan Government,* 80 F.3d 1107, 1112–13 (6th Cir.1996); *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995). In general, when a judge is called upon to apply a legal doctrine (here, the doctrine of laches) to a set of facts (here, Cook's failure to inquire about vacancies)—when he is called upon, as the cases frequently put it, to decide a "mixed question of law and fact" or an "ultimate question of fact"—the conclusion that he reaches is reviewed under a deferential standard and therefore reversed only if deemed "clearly erroneous" or (what amounts in most cases to the same thing) an "abuse of discretion." E.g., *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399–405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *United States v. Frederick,* 182 F.3d 496, 499 (7th Cir.1999); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933–37 (7th Cir.1989) (en banc).

■ This is, as we said, in general, not in every case (see, e.g., *Ornelas v. United States*, 517 U.S. 690, 696–97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)), and practice in other circuits (and often within circuits) varies. See, e.g., *Witkowski v. Welch*, 173 F.3d 192, 198 n. 7 (3d Cir.1999). But it seems to us the right place to start. Plenary appellate review is appropriate when there is a need for uniformity across cases or when the issue is so important that there is a felt need to authorize second–guessing of the first-line decision-maker; plenary review is particularly inappropriate when the first-line decider is in a better position to decide a question than the appellate court. In the case of a mixed question of law and fact, such as whether Cook's failure to inquire about vacancies was so unreasonable and so prejudicial to the City that her entitlement to backpay should be curtailed, these factors generally point to deferential review. Uniformity is important at the level of doctrine, so that people are given clear guidance on conforming their behavior to law, but much less so at the level of the application of doctrine to particular facts, a level at which meaningful uniformity is unattainable because no two cases are alike. The possibility, which is implicit in our calling appellate review of Judge Shadur's ruling deferential, that another judge faced with the identical facts confronting Judge Shadur would have come out differently does not call for plenary review; a case with identical facts is unlikely to recur, so plenary review is not necessary to prevent inconsistency. That is, Judge X might have decided the same case differently from Judge Y, but since the same case is highly unlikely ever to recur, no conflict between X and Y is likely.

Nor is the question of the correct application of the doctrine of laches of such transcendent importance as to require the appellate court to decide whether the district court decided the question correctly, as opposed to reasonably. And finally, it is a question that the district judge is in a better position to decide than we, even though it does not involve a question of credibility, or indeed any factual contest. District judges spend more time on a case than appellate judges do, even when the case is not tried. Cook's claim was pending before the district court for three and a half years and involved numerous appearances before Judge Shadur and extensive submission of documents. The judge acquired a feel for the case that we could not match without an inordinate expenditure of time. If we nevertheless were convinced that he had made a mistake, we would be bound to reverse; deferential review is not rubberstamp review. *Kidd v. Illinois State Police*, 167 F.3d 1084, 1095 (7th Cir.1999); *Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir.1994); *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 814–15 (4th Cir.1991). But reasonable doubts should be resolved in favor of the district judge's ruling in light of his greater immersion in the case. *Thermo Electron Corp. v. Schiavone Construction Co.*, 958 F.2d 1158, 1166 (1st Cir.1992).

■ Two parenthetical points, and we are done. First, Cook is wrong in arguing that under contract law the duty of mitigation in an employment case is satisfied by proof that the plaintiff had a full-time job throughout the period of the alleged breach. The doctrine is more flexible than that. It requires the victim of the breach to take reasonable efforts to minimize the cost to him. *Warren v. Stoddart*, 105 U.S. 224, 229, 26 L.Ed. 1117 (1881); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1427–28 (7th Cir.1986); *Fleet National Bank v. Anchor Media Television, Inc.*, 45 F.3d 546, 561 (1st Cir.1995); *Langreck v. Wisconsin Lawyers Mutual Ins. Co.*, 226 Wis.2d 520, 594 N.W.2d 818 (1999). If a large corporation wrongfully terminated its CEO, to whom it had been paying $1 million in salary and bonus per year, he would not be performing his duty of mitigation if he took a full-time job as an adoption counselor in a no-kill cat shelter

at a salary of $15,000 a year. *Morris v. Clawson Tank Co.*, 459 Mich. 256, 587 N.W.2d 253, 257 (1998); *Calabrese v. Chicago Park District*, 294 Ill.App.3d 1055, 229 Ill.Dec. 377, 691 N.E.2d 850, 859 (1998).

Second, if parties to a consent decree wish to cabin the district court's equitable discretion by stipulating the remedies for breach, they are free to do so. They have to persuade the judge that the remedies are reasonable—otherwise he will not sign the decree, *Blankenship & Associates, Inc. v. NLRB*, 54 F.3d 447, 449–50 (7th Cir.1995)—but if the remedies are reasonable and he does sign the decree, then the stipulation will fix the measure of relief to which the victim of a breach is entitled. See *Hughes v. United States*, 342 U.S. 353, 356–57, 72 S.Ct. 306, 96 L.Ed. 394 (1952); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir.1993); *Harris v. City of Philadelphia*, 137 F.3d 209, 213 (3d Cir.1998). This was not done here. The decree does not specify the consequences of a breach. Implicitly, that was to be referred to the district court's equitable discretion—which has not been abused.

AFFIRMED.