Kathleen BRENNAN, Susan J. Giannone, Esther Lidstrom, Jean Marcovecchio, Michele Meyer, Lorraine McIntyre, Eileen Stein, Barbara Stemmle, Doreen Triola, Kathleen Vedder, Mary Ann Durkin, Plaintiffs–Appellants,

United States of America,
Plaintiff–Appellee,

v.

NASSAU COUNTY, a municipal corporation organized pursuant to the laws of the State of New York, et al., Defendants–Appellees,

Alice Woodson White, Jacqui Harris Wilson, on behalf of herself and all others similarly situated, Carolann Calamia, on behalf of herself and all others similarly situated, Karen Ryan, Plaintiffs.

Docket Nos. 03–6009, 03–6011.

United States Court of Appeals, Second Circuit.

Argued: Oct. 23, 2003.

Decided: Dec. 10, 2003.

Michele Gapinski, Slavin, Angiulo & Horowitz, LLP, for Plaintiffs–Appellants.

Peter J. Clines, Deputy County Attorney for Lorna B. Goodman, Nassau County Attorney, for Defendants–Appellees.

The following filed a brief without participating in oral argument: Dennis J. Dimsey and Karl N. Gellert, Attorneys, Civil Rights Division, United States Department of Justice, for Ralph F. Boyd, Jr., Assistant Attorney General, and Minh N. Vu, Counselor to the Assistant Attorney General, for Plaintiff–Appellee.

Before VAN GRAAFEILAND, B.D. PARKER, Jr., Circuit Judges, BERMAN,[1] District Judge.

PER CURIAM.

Plaintiffs–Appellants appeal from a decision of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*) denying as time barred under the statute of limitations their applications to enforce consent decrees entered into in 1982 in related employment discrimination cases. For the reasons that follow, we vacate and remand to the district court for further development of the record and application of the doctrine of laches to Plaintiffs–Appellants' claims.

## BACKGROUND

In 1982, consent decrees were entered in two companion lawsuits against Nassau County, New York and related entities and officials alleging unlawful discrimination against women in the hiring and promotion practices of the Nassau County Police Department, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*[2] Plaintiff–Appellant Mary Ann Durkin ("Durkin") was awarded damages and other relief under the consent decree which resolved *White v. Nassau County Police Dep't.* ("White decree").[3] The other ten Plaintiffs–Appellants ("USA Appellants") assert claims as beneficiaries of the consent decree entered in *United States v. Nassau County* ("USA decree"), although they were not parties to that action.[4]

---

1. The Honorable Richard M. Berman, United States District Court for the Southern District of New York, sitting by designation.

2. *See White v. Nassau County Police Dep't,* No. 76–1869, 1977 WL 15366 (E.D.N.Y. Jan 11, 1977); *United States v. Nassau County,* No. 77–1881, 1990 WL 145596 (E.D.N.Y. May 22, 1990).

3. Under the terms of the White decree, Nassau County agreed, *inter alia,* to refrain from engaging in sex discrimination or retaliation, to pay class members stipulated lump sums, and to reinstate Durkin, who had left her job as a police officer in 1971 after being denied extended maternity leave, effective August 20, 1982. The White decree also provides that Durkin "shall have [her] original seniority date [*i.e.,* July 5, 1968] for all purposes except pension and retirement."

4. Under the terms of the USA decree, Nassau County was obligated "to ensure that ... females are considered for employment ... on an equal basis with white males, and that the present effects of the County's alleged prior discriminatory employment practices against ... females be corrected." The USA decree provided relief to all applicants for the positions of Policewoman or Police Cadette (i) who sat for the March 18, 1972 qualifying examination and who scored higher than the lowest general average score of any male who was subsequently appointed to Police Patrolman or Police Cadet, and (ii) were prevented from taking the Police Patrolman or Police Cadet exam because of their sex. It awarded "back pay" to compensate applicants for "the monetary loss ... incurred," and required that those persons who desired to be considered for appointment and successfully com-

In July 2002, Durkin alleged in the district court that Nassau County failed to comply with the terms of the White decree, as follows: (1) Nassau County failed to credit Durkin with accumulated vacation, sick, and personal days for the years of her involuntary separation ("leave benefits"); (2) Nassau County failed to pay Durkin (after her retirement in late 2000) one week's pay for each year of service from July 5, 1968 ("separation benefits"); and (3) Nassau County refused to allow Durkin to participate in the "1/60th Rule" retirement program ("Section 384–E benefits").[5] The USA Appellants make similar claims under the USA decree.

Nassau County and the United States oppose the Plaintiffs–Appellants' claims, arguing, *inter alia*, that their applications for relief were barred by the statute of limitations and the doctrine of laches, that the USA Appellants lacked standing, and that the decrees did not provide the requested relief. Following a brief hearing, the district court entered an order denying relief to all Plaintiffs–Appellants on statute of limitations grounds. In reaching its decision, the district court looked to New York's six-year statute of limitations for breach of contract actions and held that "[t]hese claims accrued when these officers were reinstated and the benefits sought were not credited to them, which occurred 18 or more years ago." This appeal followed.

## DISCUSSION

*A. Durkin's Claims*

▮▮▮ A district court's interpretation of a consent decree is reviewed *de novo*.

*See United States v. Int'l Bhd. of Teamsters*, 141 F.3d 405, 408 (2d Cir.1998) (citing *E.E.O.C. v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir.1996)). The application of a statute of limitations presents a legal issue and is also reviewed *de novo*. *See Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir.2001) (citations omitted).

Durkin argues persuasively that the district court erred by applying a statute of limitations analysis to her equitable claims. She asserts that while "[c]onsent decrees are interpreted using the rules of construction for contracts ... they are enforced as Orders and therefore are equitable in nature. Accordingly, consent decrees are subject only to equitable defenses and not legal defenses such as [the] statute of limitations." Defendants–Appellees argue that "[i]rrespective of whether the equitable or legal standard is applied, [Durkin's] claims are time-barred because [she] seek[s] benefits which should have been credited to [her] upon [her] reinstatement."

▮▮▮ We agree with Durkin that the court below should have applied the equitable doctrine of laches to her claims because consent decrees are subject to equitable defenses and not legal defenses such as the statute of limitations. *See United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir.1995) ("[A] consent decree is an order of the court and thus, by its very nature, vests the court

---

pleted the required training be appointed to the Nassau County police force. Nassau County was also required to provide each appointee "with all of the emoluments of the rank of Police Officer, including retroactive seniority, for all purposes (except pension and time-in-grade for eligibility for promotion)."

**5.** The "1/60th Rule" apparently refers to Section 384–E of the New York State and Local Police and Fire Retirement System. The record does not include the text of Section 384–E and the parties do not discuss the application of the 1/60th Rule in their briefs.

with equitable discretion to enforce the obligations imposed on the parties.") (citing *E.E.O.C. v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*, 925 F.2d 588, 593 (2d Cir.1991)); *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir.1985); *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir.1999) (Posner, C.J.) (holding that consent decrees are contracts from the standpoint of interpretation but equitable decrees from the standpoint of remedy "and therefore subject to the usual equitable defenses"). Durkin's motion is subject only to equitable defenses such as laches, not to legal defenses such as the statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 162, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) ("[S]tate statutes of limitations [do] not apply to a federal cause of action lying only in equity, because the principles of federal equity are hostile to the 'mechanical rules' of statutes of limitations.") (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946)).[6]

■ To determine whether Durkin's claims are barred by laches, the district court may wish to consider factors such as whether (and when) Durkin knew of Nassau County's alleged misconduct, whether she inexcusably delayed in taking action, and whether Nassau County was prejudiced by any delay. *See Ikelionwu v.* *United States*, 150 F.3d 233, 237 (2d Cir. 1998) ("[Laches] is an equitable defense that 'bars a plaintiff's equitable claim where he [or she] is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'") (citation omitted). Thus, further factual development of the record appears to be required with respect to each of Durkin's claims, *i.e.*, for leave, separation, and Section 384–E benefits.[7]

### B. The USA Appellants' Claims

We turn to the USA Appellants' right to enforce the USA decree and the ripeness of their claims.[8] *See Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir.1998) ("[T]he court can raise [ripeness] *sua sponte*, and, indeed, can do so for the first time on appeal.") (citation omitted). The USA Appellants contend that they are proper parties under Rule 71 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and that they have standing to enforce the USA decree. Nassau County maintains that, "having failed to intervene or commence a separate action, the USA claimants were not authorized to enforce the [USA] decree and therefore lack standing."

■ We find that the right of the USA Appellants to seek enforcement of

---

**6.** State statutes of limitations may be relevant "for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair." *Holmberg*, 327 U.S. at 396, 66 S.Ct. 582; *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996) ("Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense.... Th[e] statute of limitations ... determines which party has the burden of proving or rebutting the defense.").

**7.** While Durkin's claim for Section 384–E benefits may in fact be barred by the terms of the White decree, we remand as to that claim as well because of the absence of briefing and limited record discussing these benefits. *See also supra* note 5.

**8.** Because these issues were not fully presented on appeal, the Court requested the parties at oral argument to submit supplemental letter briefs, which they did on October 27 and 28, 2003.

the USA decree is clear. The USA decree by its terms "is final and binding between the parties signatory hereto ... as well as upon all persons who consent to and accept the relief provided herein." The USA Appellants, all of whom were appointed to the Nassau County Police Department as Police Officers pursuant to the USA decree, *see supra* note 4, are clearly among the group "who consent[ed] to and accept[ed] the relief provided" in the decree. And, under Fed.R.Civ.P. 71, "[w]hen an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party," for example, by a motion to compel. *See Berger*, 771 F.2d at 1565–66.

Whether the USA Appellants' claims are ripe for review is a separate inquiry.[9] On this record, we cannot determine whether the USA Appellants have suffered "an injury in fact." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted). For example, it is unclear whether the USA Appellants have separated from their jobs and which, if any, of their separate claims for leave, separation, and Section 384–E benefits have accrued. Accordingly, we vacate the order of dismissal and remand so that the district court may further develop the factual record to determine the ripeness of the USA Appellants' claims and to reconsider any such claims in light of our ruling with respect to Durkin, *supra*.

**CONCLUSION**

For the foregoing reasons, the order of the district court is vacated and the case remanded.

---

**9.** *See United States v. Dist. Council*, No. 90–5722, 2002 WL 31873460, at \*8 (S.D.N.Y. Dec. 24, 2002) ("[A]s a leading text points out, 'Rule 71 does nothing to disturb the requirement of standing to sue.' Because that is so, the Second Circuit took pains in *Berger* to point out that '[t]he three intervenor-participants in the contempt motion' [had suffered an injury in fact]; it followed that '[t]here is no contention that the Rule 71 intervenors here do not have standing.' ") (citations omitted). *See also* 15 James Wm. Moore et al., *Moore's Federal Practice* § 101.71 (3d

ed.2003) ("The doctrines of ripeness and standing are intertwined .... If a plaintiff has not yet suffered a concrete injury-in-fact, he or she lacks standing, even though it is possible that in the future such an injury will occur. Yet such a suit could also be said to suffer from a lack of ripeness because the circumstances have not yet developed to the point where the court can be assured that a live controversy exists.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).