RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0314p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DIETRICH R. BERGMANN, individually and as
the successor in interest of, PHYLLIS A.
HILLSON BERGMANN,
     *Plaintiffs-Appellees/Cross-Appellants,*

     *v.*

MICHIGAN STATE TRANSPORTATION
COMMISSION; MICHIGAN DEPARTMENT OF
TRANSPORTATION,
     *Defendants-Appellants/Cross-Appellees.*

Nos. 10-1708/1770

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 89-72046—Anna Diggs Taylor, District Judge.

Argued: November 18, 2011

Decided and Filed: December 15, 2011

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL
_____

**ARGUED:** John P. Mack, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. William P. Godfroy, CZERYBA & GODFROY, Monroe, Michigan, for Appellees. **ON BRIEF:** John P. Mack, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellants. William P. Godfroy, CZERYBA & GODFROY, Monroe, Michigan, for Appellees.

_____

## OPINION
_____

KETHLEDGE, Circuit Judge. The district court partially granted Dietrich Bergmann's motion to enforce a decades-old consent decree concerning some real estate he owned in Detroit. In deciding which portions of the decree are enforceable, however,

1

the court incorrectly looked to Michigan's statute of limitations, rather than the doctrine of laches.  We vacate and remand.

## I.

In 1979, Dietrich Bergmann bought land in Detroit from the Michigan State Transportation Commission.  A decade later, he sued the Commission and the Michigan Department of Transportation (together, the "Department") under the federal Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq*.  He alleged that there was contamination on the site and  sought the "costs of exploratory work and of remediating" the land.

In its initial pleadings, the Department asserted sovereign immunity from suit. At that time, however, the Supreme Court had interpreted the Eleventh Amendment to allow states to be sued under CERCLA.  *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989).  The Department later dropped the sovereign-immunity defense in its answer to Bergmann's first amended complaint.

After discovery, the parties settled.  The district court entered a consent decree on June 21, 1991.  The decree required the Department to remediate Bergmann's property by March 31, 1995.  If by then the Department failed to make a good-faith effort to remediate, the decree required the Department to pay Bergmann $2,000 per month in liquidated damages on the first day of every month until the remediation was complete.

The Department failed to remediate the property or to pay the liquidated damages.  On July 31, 2009—more than 14 years after those obligations came due—Bergmann filed a motion with the same district court to enforce the decree.  In response, the Department asserted sovereign immunity, citing a change in Supreme Court precedent.  The district court eventually held that the Department had waived its sovereign immunity decades earlier by abandoning its argument that immunity barred the suit.  The court then granted Bergmann's motion in part:  It held that Michigan's 10-

year statute of limitations barred enforcement of the Department's remediation obligation, but that each of the missed $2,000 payments triggered its own 10-year limitations period. Thus, the court awarded Bergmann damages for the period between August 1999 and March 26, 2010 (the date of its order). Both parties appeal.

II.

A.

As an initial matter, the Department says that Bergmann failed to give advance notice of his enforcement motion, as Michigan law purportedly requires. *See* MCL § 600.6431. But assuming that rule applies, the Department has not shown any prejudice from Bergmann's failure to follow it. *See Horner's Trucking Serv. v. Michigan State Highway Dep't*, 236 N.W.2d 122, 124 (Mich. Ct. App. 1975). Bergmann's purported failure to give notice is therefore no obstacle to his enforcement motion. *See id.*

The Department challenges the district court's holding that the Department waived its sovereign immunity decades earlier in the litigation. The Department does not deny that entering into a consent decree rather than asserting sovereign immunity in the initial suit usually waives any immunity against later enforcement of the decree. *See United States v. Gov't of Virgin Islands*, 363 F.3d 276, 288–89 (3d Cir. 2004). But the Department notes that, at the time it entered into this decree, the Supreme Court had interpreted CERCLA to abrogate states' sovereign immunity. Only in 1996 did the Supreme Court make clear that CERCLA does not abrogate that immunity. *Compare Union Gas Co.*, 491 U.S. at 13–14, *with Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72 (1996). The Department therefore contends that it did not waive its sovereign immunity voluntarily, which in its view renders the waiver ineffective.

It is true that other courts have held that, in certain circumstances, a state's failure to assert sovereign immunity while *Union Gas* was good law did not act as a waiver of its immunity. *See Oregon Short Line R.R. Co. v. Dep't of Revenue Oregon*, 139 F.3d 1259, 1264 (9th Cir. 1998); *Quillin v. State of Oregon*, 127 F.3d 1136, 1138–39 (9th Cir.

1997) (per curiam).  But the circumstances here are different.  In those cases, the state defendants acted "promptly" to assert their sovereign immunity "once [*Seminole Tribe*] was handed down."  *Oregon Short Line*, 139 F.3d at 1264; *see also Quillin*, 127 F.3d at 1138.  Here, in contrast, the Department submitted to the decree for more than a decade after *Seminole Tribe* before finally seeking to challenge the decree's legality.  That submission, coupled with the Department's earlier decision to engage in extensive litigation and sign a consent decree, represents a "clear indication" of the Department's intent to waive its sovereign immunity.  *See Ku v. State of Tenn.*, 322 F.3d 431, 434–35 (6th Cir. 2003).  The waiver remains effective.

B.

Both parties argue that the district court misapplied Michigan's statute of limitations.  But we think the court should not have applied the statute at all.  As Judge Posner has explained: "From the standpoint of interpretation a consent decree is a contract, but from the standpoint of remedy it is an equitable decree."  *Cooke v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999) (collecting cases).  Thus, if a party violates a consent decree, his opponent "must ask the court for an equitable remedy[,]" which is then "subject to the usual equitable defenses."  *Id.*  For this reason, the Second Circuit holds that the equitable doctrine of laches—and not the state statute of limitations—governs the timeliness of motions to enforce consent decrees in non-diversity cases.  *See Brennan v. Nassau County*, 352 F.3d 60, 63–64 (2d Cir. 2003) (per curiam).

We agree with the Second Circuit.  The Supreme Court has held that, where a party seeks to enforce a federally-created right for which the "remedy is in equity," courts should apply laches rather than state statutes of limitations.  *See Holmberg v. Armbrecht*, 327 U.S. 392, 395–96 (1946).  The Federal Rules of Civil Procedure preserve this distinction, requiring federal courts to apply state procedural rules when enforcing money judgments (Rule 69), but not when enforcing judgments that require a party to perform a "specific act" (Rule 70).  *See Hamilton v. MacDonald*, 503 F.2d

1138, 1148–49 (9th Cir. 1974).  On remand, therefore, the district court should apply the doctrine of laches in deciding Bergmann's motion to enforce the decree.

The district court's order partially enforcing the decree is vacated, and the case remanded for proceedings consistent with this opinion.