# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EVERGREEN SAFETY COUNCIL, a
Washington nonprofit corporation,
_Plaintiff-Appellee,_

v.

RSA NETWORK INC., DBA Starfish
Network, Inc., a Utah corporation,
_Defendant-Appellant._

No. 11-35680

D.C. No.
2:09-cv-01643-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
July 12, 2012—Seattle, Washington

Filed October 17, 2012

Before: Mary M. Schroeder, Stephen Reinhardt, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

12547

## COUNSEL

Blake Ostler (argued), Salt Lake City, Utah, John Whitaker, Seattle, Washington, for the defendant-appellant.

David C. Spellman, Tiffany Scott Connors (argued), Seattle, Washington, for the plaintiff-appellee.

## OPINION

M. SMITH, Circuit Judge:

RSA Networks (RSA) appeals the district court's grant of summary judgment dismissal of RSA's claim for copyright infringement against Evergreen Safety Council (Evergreen) on the ground of laches. RSA contends that the district court erred in applying laches because Evergreen willfully infringed upon its copyright. We reject this argument because Evergreen acted under color of title and in good faith, and therefore did not willfully infringe upon RSA's copyright. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001). RSA also contends the district court erred in dismissing the case because RSA still retained claims for injunctive relief. We likewise reject that argument because the alleged future infringements named as the basis for the injunctive relief are identical to the original infringements, and thus are barred by laches as well. *Danjaq*, 263 F.3d at 960. Accordingly, we affirm the district court's summary judgment dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

Evergreen is a Seattle-based non-profit that disseminates safety and health information, and provides training on pilot escort vehicles. Pilot escort vehicles generally position themselves directly in front of, or behind, an escorted oversized vehicle. RSA is a Utah-based company that has been involved in the pilot escort business for over 25 years. Randy Sorenson (Sorenson) is the president of RSA. Both Evergreen and RSA provide pilot escort vehicle operator training, and both parties have published training manuals for use in conjunction with mandatory state certification programs.

In 1991, Sorenson began working with a Utah state steering committee to develop a certification program for pilot escort vehicle training. By that time, Sorenson had commenced drafting a manual, which was subsequently revised and adopted in 1992 as the course syllabus in the Utah state certification program. In 1993, Sorenson registered his manual with the U.S. Copyright Office. In 1996, Sorenson began working with representatives of the State of Florida to modify his Utah certified program for use in Florida. From 1996, Sorenson worked as a consultant to various states, agencies and organizations "to educate and promote standardization within the pilot/escort industry." Based upon his work as a consultant, he indicated in the 1996 foreword to his revised manual that he was then "working with Washington, Oregon, Arizona, Idaho, North Carolina, and Kansas" to develop their pilot escort vehicle training programs.

In 1998, the Washington State Department of Transportation decided to develop a pilot vehicle training program. During the summer of 1998, the chair of the Washington steering committee proposed to "develop an outline based on Utah's [training manual]." The committee chair also inquired whether Utah's material was copyrighted.

In late 1998 and early 1999, Sorenson met with the Washington steering committee twice, including one meeting at Evergreen's office regarding the development of Washington's training program. The State of Washington designated Evergreen as the administrator of its pilot escort training program. On May 12, 1999, Evergreen's president sent Sorenson a letter (Letter) enclosing Evergreen's draft manual. The Letter included a reference to a prior meeting with Sorenson and a telephone call, in which Evergreen's draft manual and Washington's training program were discussed. Among other things, the Letter stated: "We will probably have a final version [ready] to go after we meet this Friday with our task group." The Letter concluded: "Once you have had an opportunity to scan the material, we would appreciate any and all

observations, suggestions or comments. We look forward to hearing from you." Sorenson claimed that the Letter was not opened by anyone when it was received by RSA in 1999, and that RSA did not open the Letter, or become aware of its contents, until 2010.

There is no record evidence that Evergreen ever heard from Sorenson after it sent the Letter, and three months after Sorenson received the Letter and draft manual, Evergreen printed the final first edition of its manual. A second edition was printed in December 1999. In 2003, Evergreen received a copyright registration for a further revision entitled, "Evergreen Safety Council's certified pilot/escort vehicle operator (P/EVO) course."

Sorenson claims that in 2009, despite having advertised his consultative role with multiple different states for over a decade, he became aware that Oklahoma, North Carolina, and Washington were infringing RSA's copyrights. At that time, RSA sent demand letters jointly to Evergreen and the Washington State Department of Transportation.

In 2009, Evergreen met with Sorenson and his attorney. Sorenson told Evergreen that RSA had licensing agreements with Florida, Oklahoma, and North Carolina. Evergreen later determined that Sorenson's Florida, Oklahoma, and North Carolina licensing claims were false. Shortly after the meeting with Sorenson and his attorney, Evergreen filed suit on November 18, 2009, seeking declaratory judgment of non-infringement regarding some of the artwork in its manual, and asserting a fair use defense. Eleven months later, RSA sent a letter identifying specific allegedly infringing items (primarily diagrams) and demanding that Evergreen cease infringing. In an attempt to ameliorate Sorenson's concerns, Evergreen stated that it would "deplete the remaining inventory of 4,000 manuals within eighteen months."

A year after filing the suit, on November 18, 2010, RSA asserted a counterclaim for copyright infringement. The coun-

terclaim included a willful infringement claim for enhanced damages. In response to the counterclaim, Evergreen asserted laches, license, acquiescence, fair use, equitable estoppel and other affirmative defenses.

RSA moved for partial summary judgment asserting that Evergreen had willfully infringed, and requesting an immediate injunction. The district court granted summary judgment dismissal to Evergreen on the basis of laches. RSA subsequently moved for reconsideration on the grounds that the evidence did not satisfy the required elements of laches on summary judgment, that the willful infringement exception prevented the application of laches, and that laches could not bar RSA's claim for prospective injunctive relief.

The district court ordered Evergreen to respond regarding the claim for prospective relief. Evergreen responded and declared that it was planning to publish a fifth edition of its manual using scale model photographs instead of the disputed diagrams, and further, that Evergreen was placing a sticker over an allegedly infringing part of the remaining inventory of its existing manual, thus eliminating any remaining similarity between Evergreen's manual and the works protected by RSA's copyright. The district court ultimately denied RSA's motion for reconsideration.

## STANDARD OF REVIEW AND JURISDICTION

Summary judgment dismissal on the grounds of laches triggers a hybrid abuse of discretion/clear error standard of review.[1]

---

[1]There is a intracircuit split over the standard of review for the application of laches. *Danjaq*, 263 F.3d at 952; *see also Internet Specialties W., Inc. v. Milon-Digiorgio Enters., Inc.*, 559 F.3d 985, 990 (9th Cir. 2009); *Telink, Inc. v. United States*, 24 F.3d 42, 47 & nn.10—11 (9th Cir. 1994) (reviewing for abuse of discretion, but noting an intracircuit conflict between the abuse of discretion and clearly erroneous standards). As was the case in *Danjaq*, we need not resolve the intracircuit split here, because we conclude that the district court's ruling on laches must stand regardless of whether it is reviewed for abuse of discretion, or for clear error. *Danjaq*, 263 F.3d at 952.

*Danjaq*, 263 F.3d at 951. Whether a court inappropriately resolved any material issues of disputed fact on summary judgment is reviewed de novo. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002). Summary judgment may be affirmed on any ground supported by the record. *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009).

The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Laches

**[1]** Laches is an equitable defense that prevents a plaintiff, who "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq,* 263 F.3d at 950-51 (internal citations and quotation marks omitted). In the context of copyright:

> It must be obvious to every one familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

*Danjaq,* 263 F.3d at 951 (quoting *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916)). To prove laches, the "defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).

### A. Unreasonable Delay and Undue Prejudice

**[2]** When evaluating the reasonableness of a delay, the evaluation period begins when the plaintiff knew (or should

have known) of the allegedly infringing conduct, and ends with the initiation of the lawsuit in which the defendant seeks to invoke the laches defense. *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000) ("any delay is to be measured from the time that the plaintiff knew or should have known about the potential claim at issue"). In determining the reasonableness of the delay, courts look to the cause of the delay. Delay has been held permissible for a variety of reasons, such as when delay is required by an exhaustion of remedies through an administrative process, when it is "used to evaluate and prepare a complicated claim," or when its purpose is "to determine whether the scope of proposed infringement will justify the cost of litigation." *Danjaq*, 263 F.3d at 954 (internal citations and quotation marks omitted). In contrast, delay is impermissible when its purpose or effect is to capitalize on the value of the alleged infringer's labor by determining whether the infringing conduct will be profitable. *Id.*

[3] Evergreen has demonstrated the requisite unreasonable delay. The laches evaluation period in this case began to run on the day when Sorenson received Evergreen's draft manual and the Letter, sent by Evergreen on May 12, 1999, because that is the date on which Sorenson knew, or should have known, of the allegedly infringing content. *Danjaq*, 263 F.3d at 952. The fact that Sorenson had the Evergreen draft manual in his possession in 1999, regardless of whether he actually read it, demonstrates that he should have known of the infringement approximately ten years before he commenced his action in 2009. *Id.* The delay was unreasonable because it involved no evaluation or investigation of the claim, or other legitimate justification; RSA merely slept on its rights. Sorenson cannot rely on the fact that he allegedly did not open the Letter containing the draft manual until nearly twelve years later. *See generally* Restatement (Second) of Contracts § 68 cmt. a (1981) ("What amounts to receipt in all these cases is defined by the present Section, under which a written communication may be received though it is not read or though it

does not even reach the hands of the person to whom it is addressed."); *see also Danjaq*, 263 F.3d at 951 ("[I]t is inequitable for the owner of a copyright, with full notice of intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success.") (quoting *Haas v. Leo Feist, Inc.*, 234 F.2d 105, 108 (S.D.N.Y. 1916)).

We recognize generally two forms of prejudice in a laches context: evidentiary and expectations-based. *Danjaq*, 263 F.3d at 955. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Id.* Expectations-based prejudice occurs when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.*

[4] The ten-year delay here caused evidentiary prejudice because Evergreen's executive officer, who was involved in the negotiations with Sorenson, had died, and other involved employees had relocated or forgotten about components of the case (namely, important details concerning the development of the draft manual with Sorenson's assistance in 1998 and 1999). Likewise, Sorenson conceded that his own records regarding his involvement with, and payment from, Evergreen were destroyed in 2004. Sorenson's business records were also destroyed after his corporate bankruptcy, and he kept minimal records after his personal bankruptcy. Accordingly, Evergreen demonstrated significant evidentiary prejudice. *Danjaq*, 263 F.3d at 955. Moreover, RSA's delay caused expectations-based prejudice because Evergreen likely would not have produced or revised and reproduced the infringing manual multiple times had RSA initiated its infringement action in 1999. Accordingly, we hold that the district court did not err in finding unreasonable delay and undue prejudice sufficient for laches to apply.

### B.    Willfulness Exception

**[5]** The doctrine of laches does not apply in cases of willful infringement. *Danjaq*, 263 F.3d at 956-57. Willfulness occurs where an infringer acts "with knowledge that the defendant's conduct constitutes copyright infringement." *Id.* at 957 (internal citations and quotation marks omitted). Willfulness does not exist, however, where infringing works were produced under color of title, such as a under a reasonable belief that the infringer possesses a license or implied license. *See Danjaq*, 263 F.3d at 959; *see also Frank Music Corp. v. Metro-Goldwin-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) (finding no willfulness where defendants reasonably could have believed that they had a valid license to use plaintiffs' works). Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing. *See Princeton Univ. Press v. Mich. Document Servs.,* 99 F.3d 1381, 1392 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997) ("[W]e cannot say that the defendants' belief that their copying constituted fair use was so unreasonable as to bespeak willfulness."); *see also Danjaq*, 263 F.3d at 959; 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04 (Matthew Bender rev. ed. 2012) ( "[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.") (footnotes omitted).

RSA contends that laches does not apply because Evergreen willfully infringed upon its manual both *before* the demand letter and *after* the demand letter. Specifically, RSA contends that Evergreen willfully infringed its work before the demand letter because Evergreen knew RSA's work was copyrighted. Likewise, RSA contends that Evergreen willfully infringed after the demand letter because RSA put Evergreen on notice of its claim. We disagree with both contentions.

**[6]** The record contains ample evidence, prior to the date of the demand letter, of Evergreen's good faith in producing its training manual. In 1999, Evergreen invited Sorenson to comment upon its draft manual before publication. That same year, Evergreen paid Sorenson $300 in conjunction with his consultations. Evergreen specifically identified and thanked Sorenson for his assistance in the foreword to its manual. Evergreen sent the manual and the Letter to Sorenson on May 12, 1999 asking him for any "observations, suggestions or comments" on the draft manual, and indicating that the "final version" of the manual would be ready to publish "after we meet this Friday with our task group." Sorenson repeatedly advertised his involvement in the development of the Washington pilot escort training program. Sorenson also repeatedly and publicly advertised his willingness to consult with and assist states in developing pilot escort training programs. Such evidence provides an ample basis for Evergreen's reasonable and good faith belief in the possible existence of an express license, but at the very least, an implied license, and thus that the publication of its manual did not constitute infringement. *See Asset Marketing Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008). Accordingly we hold that, as to the period before RSA's demand letter, Evergreen did not willfully infringe upon RSA's copyright because it acted under color of title. *Id.*

**[7]** As to the period after the demand letters, Evergreen contends that in addition to having acted under color of title, the ten diagrams at issue in RSA's comparison constituted "*scenes a faire*" of dangerous traffic situations in pilot escort training and, accordingly, Evergreen's use was non-infringing because RSA's diagrams were not protected by copyright. We agree with Evergreen's reasoning. Under the doctrine of *scenes a faire,*[2] we "will not protect a copyrighted work from

---

[2]Scenes a faire has been literally translated to "scenes which 'must' be done." *Nimmer on Copyright* § 13.03 (citing *Schwarz v. Universal Pic-*

infringement if the expression embodied in the work necessarily flows from a commonplace idea . . . ." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000). Most basically, when similar features of a work are "as a practical matter indispensable, or at least standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright." *Apple Computer Corp. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (internal quotation marks, modification, and citation omitted). We are persuaded that Evergreen reasonably believed that the images in its revised manual constituted *scenes a faire* of dangerous driving situations because of the limited ways to portray such basic scenarios and the simplistic nature of RSA's diagrams. *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003); *see also Danjaq*, 263 F.3d at 959; *Princeton Univ. Press,* 99 F.3d at 1392. Accordingly, because Evergreen reasonably believed that its use of the diagrams was non-infringing, we hold that Evergreen did not willfully infringe RSA's copyright after its receipt of the demand letters.

**[8]** Ultimately, Sorenson's conduct caused Evergreen to believe that it was licensed to draw upon RSA's works, and Evergreen's continuing good faith after the letters demonstrates a lack of willfulness. *See Asset Marketing Sys., Inc.*, 542 F.3d at 757; *see also Danjaq*, 263 F.3d at 959 ("To hold that willfulness must be inferred whenever an alleged infringer uses an intellectual property in the face of disputed title would turn every copyright claim into willful infringement and would improperly discourage many legitimate, good faith transactions."). Thus, because Evergreen acted under color of title, and because any later infringing images are pro-

---

*tures Co.*, 85 F. Supp. 270 (S.D. Cal. 1949)). In the context of copyright, *scenes a faire* refers to the notion that less copyright protection is afforded to "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Id.* (citing *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) , *cert. denied*, 459 U.S. 880, (1982)).

tected by Evergreen's reasonable belief in their fair use, we hold that the district court did not err in holding that the willfulness exemption did not apply, and that laches barred RSA's copyright claim.

## II.   Prospective Injunctive Relief

**[9]** Laches does not *per se* bar claims for prospective relief. *Danjaq*, 263 F.3d at 960. However, when the "feared future infringements are identical to the alleged past infringements" and "stem[ ] from the same claimed original sin" (i.e., access to the materials), then laches may serve to bar prospective relief. *Id.*

**[10]** Here, all of RSA's claims stem from the same alleged "original sin"—Evergreen copying portions of RSA's 1996 manual without an express license. Moreover, some of the most characteristic aspects of RSA's manual, such as the maintenance list which was originally copied in an earlier edition of Evergreen's manual, is now available in the public domain and no longer appears in Evergreen's current manual. Accordingly, we hold that the district court did not clearly err in denying RSA's motion for prospective relief because (1) the similarities between Evergreen's manuals and RSA's original 1996 manual have now been virtually eliminated; and (2) to the extent that similarities still exist, they are protected by Evergreen's use of information in the public domain regarding the standardization of pilot escort certification programs. Accordingly, the district court did not err in denying prospective relief to RSA.

### CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.