NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAY 2 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROYCE MATHEW, | No. 15-56726 |
| Plaintiff-Appellant, | D.C. No. 2:14-cv-07832-RGK-AGR |
| v. | |
| THE WALT DISNEY COMPANY et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 7, 2017
Pasadena, California

Before: CLIFTON and OWENS, Circuit Judges, and ANTOON,** District Judge.

Plaintiff Royce Mathew appeals from the district court's grant of Disney's

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and from the

district court's entry of a consent judgment as to Disney's counterclaim. As the

parties are familiar with the facts, we do not recount them here. We have

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1. Mathew's nearly four-year delay in providing notice of rescission substantially prejudiced Disney.**

Mathew learned of Disney's alleged fraudulent procurement of their mutual release (the "Release") on June 1, 2009. As Mathew conceded at oral argument, he did not provide Disney notice of his intent to rescind the Release until he filed suit on May 28, 2013, nearly four years after "'discover[ing] the facts which entitled him to rescind.'" *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1104 (9th Cir. 1998) (quoting Cal. Civ. Code § 1691). The notice was not prompt.

California Civil Code § 1693 provides that a claim for rescission "shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party." Cal. Civ. Code § 1693. Whether a party has been substantially prejudiced by a delay is a fact-specific inquiry. *Wilke v. Coinway, Inc.*, 64 Cal. Rptr. 845, 854 (Ct. App. 1967).

This court, in the context of laches, has held that substantial prejudice exists where a defendant shows that during a plaintiff's delay, the defendant "invested money to expand its business or entered into business transactions based on its presumed rights." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012) (internal quotation marks and alteration omitted), *overruled on other grounds by Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956 (9th Cir. 2001) (holding that

2

the record supported a finding of economic prejudice where there was "uncontested evidence" that the defendant invested a billion dollars in developing, producing, and marketing the James Bond films).

While a finding of substantial prejudice is generally premature at the 12(b)(6) stage, here the Second Amended Complaint alleges that since May 28, 2010, Disney has continuously exploited the *Pirates of the Caribbean* Franchise "in movies, television, on-line streaming, DVD's, video games, merchandising and otherwise in connection with . . . public showings, distribution, licensing, and merchandising," released a fourth movie in the series, and worked on developing a fifth movie. These allegations are sufficient to hold that Disney suffered economic prejudice from Mathew's delay in seeking rescission because, relying on its presumed rights, including the comprehensive Release obtained from Mathew, Disney expended significant resources in developing its *Pirates of the Caribbean* Franchise. Accordingly, Mathew cannot rescind the Release.

**2. The district court did not err in entering a consent judgment in favor of Disney on Disney's counterclaim.**

"[U]pon agreement of the parties," the court entered judgment in favor of Disney on Disney's counterclaim in the amount of $3,500. A consent judgment that "appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause." *United States v. Bechtel Corp.*, 648 F.2d 660, 663 (9th Cir. 1981) (internal quotation marks omitted). Because Mathew

does not contest that he consented to the entry of judgment, the consent judgment must be affirmed.

**AFFIRMED.**

No. 15-56726, *Royce Mathew v. The Walt Disney Co.*

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent.

The majority disposition rests on a determination that Disney was substantially prejudiced by Mathew's delay in giving notice of his intent to rescind the Release. Specifically, the majority concludes, at 3, that "Disney suffered economic prejudice from Mathew's delay in seeking rescission because, relying on its presumed rights, Disney expended significant resources in developing its *Pirates of the Caribbean* Franchise."

That Disney invested a lot of money to reap the enormous rewards it has collected from that franchise does not itself establish substantial prejudice, however. There is a necessary piece missing from that finding. Disney had to "sho[w] that it took actions or suffered consequences *that it would not have, had the plaintiff brought suit promptly.*" *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001) (emphasis added).

If Disney would have proceeded with the *Pirates of the Caribbean* movie series even if it had known that Mathew would attempt to rescind the Release, then it cannot establish prejudice from the delay, under California law. The California Supreme Court said so in *Conti v. Bd. of Civ. Serv. Commissioners*, 461 P.2d 617, 623 (Cal. 1969), which held: "If the delay has caused no material change *in statu*

*quo, ante,* i.e., no detriment suffered by the party pleading the laches, his plea is in vain." Our court's cases construing California law have said as much as well. *See Russell v. Price*, 612 F.2d 1123, 1126 (9th Cir. 1979) ("[T]he detriment [defendant] claims to have suffered as a result of plaintiff's delay in bringing this action does not constitute prejudice within the meaning of the laches doctrine. [Defendants] at no time changed their film distribution activities in reliance on [plaintiff's] conduct. [Defendants] cite no case in which a false sense of security alone has been enough to bar an otherwise proper claim."); *Evergreen Safety v. RSA Network Inc.*, 697 F.3d 1221, 1227-28 (9th Cir. 2012) (defendant proved it was prejudiced by unreasonable delay in suing because defendant "would not have produced or revised and reproduced the infringing manual multiple times had [plaintiff] initiated its infringement action" earlier).

It is hardly obvious that Disney would have abandoned such a lucrative movie series simply because Mathew threatened to try to rescind the Release. Mathew did not notify Disney of his claim until after the first, very successful movie in the series had been released. Substantial revenues had already started flowing to Disney before the Release was ever negotiated with Mathew. The second movie in the series, *Dead Man's Chest*, was released in July 2006, after Mathew had made Disney aware of his claim but a year before that Release was

2

signed. It wound up being the number one movie of the year at the box office, reportedly generating more than one billion dollars in ticket sales worldwide. Mathew's complaint alleged that the third movie in the series, *At World's End*, was released in 2007 and also generated more than one billion dollars in box office, merchandising, and licensing receipts. A fourth movie was released in 2011, and a fifth is scheduled for release later this year, even while Mathew's lawsuit is pending before us. That Disney would not have pursued the *Pirates of the Caribbean* franchise if it had known of Mathew's subsequent intent to try to rescind the Release is more than a little implausible.

More to the point, that is a factual determination that cannot properly be made on a motion to dismiss based on the allegations contained in Mathew's complaint. Substantial prejudice is a fact-intensive question that Disney had the burden to prove. *E.g., Conti v. Board of Civil Service Commissioners*, 461 P.2d 617 (Cal. 1969); *Bono v. Clark*, 128 Cal. Rptr. 2d 31, 38 (Ct. App. 2002). It is true the complaint filed by Mathew alleged that Disney has pursued the *Pirates* franchise in multiple ways. It did not allege that Disney suffered substantial prejudice, however, and it certainly did not allege that Disney would have abandoned the *Pirates* franchise or run it at all differently had it known earlier of Mathew's intent to rescind the release.

3

It is fundamental that Rule 12(b)(6) requires a court to construe the allegations of the complaint in the light most favorable to the nonmoving party, in this case Mathew. *See, e.g.*, *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The district court did not do that, and neither has the majority in its disposition. The conclusion that Disney was substantially prejudiced by Mathew's delay in giving notice of his intent to rescind the Release was wildly premature.[1]

At oral argument, counsel for Disney realistically acknowledged that it was possible that the series might have gone forward anyway, but he pointed out that there were other steps Disney might have taken, such as to file a declaratory relief

---

[1] The district court may have been influenced by a concern for the threat that Mathew would seek to recover all of Disney's substantial profits from the *Pirates* franchise and may have presumed that the threat necessarily would have affected how Disney managed its franchise. If so, this was improper. The Supreme Court in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), cautioned that a plaintiff would not be entitled to all, or even most, of the defendant's profits because "the District Court, in determining appropriate injunctive relief and assessing profits, may take account of [his or her] delay in commencing suit," the plaintiff would only be able to recover for infringement within the Copyright Act's 3-year period of limitations, the defendant "may prove and offset against profits made in that period 'deductible expenses' incurred in generating those profits," and "the defendant may prove and offset 'elements of profit attributable to factors other than the copyrighted work," thus, the defendant "may retain the return on investment shown to be attributable to its own enterprise, as distinct from the value created by the infringed work." *Id.* at 1973-78 (citations and quotations omitted). A court cannot presume substantial prejudice by inferring that Disney would have behaved a certain way based on a mistaken view of the law.

4

action to resolve Mathew's claim earlier rather than later. Possibly so, but that is not something that can be derived from the complaint, nor is it so certain that it can be found as a matter of law. Moreover, as it seems likely that Disney would have continued to pursue the *Pirates* franchise in the meantime rather than run the risk that it would wither in value, it would limit Disney's laches defense to the additional amount that it might have been able to save if it had been able to take that action. That would still leave open the possibility of a claim by Mathews for some share in the profits received by Disney in the meantime.

Despite the majority's acknowledgment, at 3, that "a finding of substantial prejudice is generally premature at the 12(b)(6) stage," the majority nonetheless tries to justify its affirmance of the dismissal in this case based on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946 (9th Cir. 2012), *overruled on other grounds by Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014). The district court in *Petrella* did not presume substantial prejudice on a motion to dismiss, however. The court in *Petralla* found substantial prejudice at the summary judgment stage, after the parties had an opportunity to develop and submit evidence on the issue. 694 F.3d at 953-54. That approach was consistent with the fact-intensive nature of the substantial prejudice inquiry, unlike the approach taken in this case.

5

In addition, the majority cites *Petrella* for the proposition that substantial prejudice exists whenever a defendant shows that it "invested money to expand its business or entered into business transactions based on its presumed rights" during the delay. 695 F.3d at 953. But this fundamentally misunderstands *Petrella* and would bring that decision into conflict with our decisions in other cases, including *Internet Specialties West, Inc. v. Milon-Digiorgio Enterprises, Inc.*, 559 F.3d 985, 991-93 (9th Cir. 2008) ("If this prejudice could consist merely of expenditures in [the allegedly infringing work], then relief would have to be denied in practically every case of delay."). *Petrella* made clear that the proposition quoted above only applied in instances of extraordinary delay, in that case of 18 to 19 years, where less proof of prejudice was required. 695 F.3d at 952-53. The delay in our case was less than four years. That does not mean that Mathew's delay should be disregarded, but it does mean that it cannot be presumed that Disney must have suffered prejudice so substantial that Mathew's claim should be dismissed on a motion to dismiss.

*Danjaq*, the other case the majority cites as supporting its position regarding the finding of substantial prejudice to support the application of a laches defense, involved an even longer delay by the plaintiff in asserting its claim, a delay of nearly 40 years. 263 F.3d at 956. *Danjaq*, moreover, did not involve a dismissal at

the stage of a 12(b)(6) motion, either. The court there only concluded that there was substantial prejudice after a bench trial. *Id.* at 950.

Disney may still prove substantial prejudice sufficient to make out the affirmative defense of laches. If the district court thought that issue was likely to be dispositive, it could organize the litigation to focus on it, by limiting discovery to that issue and directing the parties to brief an appropriate motion for summary judgment. Disposal of Mathew's claim might be appropriate then. It is not appropriate now, however.

The claim presented by plaintiff Royce Mathew strikes me as unlikely to succeed in the end, for multiple reasons, but that perception does not give us leave to resolve this case at the stage of motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on a determination that is essentially factual. I would vacate the district court's order of dismissal under Rule 12(b)(6) and remand for further proceedings.