**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| EAT RIGHT FOODS LTD., *Plaintiff-Counter-Defendant-Appellant*, | No. 15-35524 |
| | D.C. No. 2:13-cv-02174-RSM |
| v. | |
| WHOLE FOODS MARKET, INC., *Defendant*, | OPINION |
| and | |
| WHOLE FOODS MARKET SERVICES, INC.; WHOLE FOODS MARKET PACIFIC NORTHWEST, INC., *Defendants-Counter-Claimants-Appellees.* | |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief Judge, Presiding

Argued and Submitted December 4, 2017
Seattle, Washington

Filed January 29, 2018

Before:  Richard C. Tallman and Paul J. Watford, Circuit Judges, and Richard F. Boulware II,[*] District Judge.

Opinion by Judge Tallman

---

**SUMMARY**[**]

**Trademark**

The panel vacated the district court's grant of summary judgment in favor of the defendant in a trademark infringement case, affirmed the district court's denial of the plaintiff's cross-motion for summary judgment, and remanded with instructions.

Eat Right Foods, which sold "EatRight"-branded cookies to Whole Foods for many years, alleged that Whole Foods infringed on its trademark by selling a variety of foods under the "EatRight America" mark.

The panel concluded that disputed material facts establishing or defeating the affirmative defenses of laches and acquiescence had not been resolved.  As to laches, the panel concluded that if the district court had credited Eat Right Foods' evidence that it waited to file suit because it was attempting to resolve its claims against Whole Foods without litigation, then the court might have come to a

---

[*] The Honorable Richard F. Boulware II, United States District Judge for the District of Nevada, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

different conclusion about the reasonableness of the delay. The panel also vacated the district court's finding that Whole Foods suffered expectations-based prejudice. As to acquiescence, the panel held that the flaws in the district court's unreasonable delay and prejudice analyses also affected its acquiescence analysis. In addition, the district court failed to make factual findings regarding the extent and reasonableness of Whole Foods' reliance on Eat Right Foods' actions.

---

## COUNSEL

Mark P. Walters (argued) and Lawrence D. Graham, Lowe Graham Jones PLLC, Seattle, Washington, for Plaintiff-Counter-Defendant-Appellant.

Stephen P. Meleen (argued), Jered E. Matthysse, and Travis R. Wimberly, Pirkey Barber PLLC, Austin, Texas; Christopher Tompkins, Betts Patterson Mines, Seattle, Washington; for Defendants-Counter-Claimants-Appellees.

---

## OPINION

TALLMAN, Circuit Judge:

Eat Right Foods Ltd. (ERF) appeals the district court's summary judgment dismissal of its claims against Whole Foods Market Services, Inc., and Whole Foods Market Pacific Northwest, Inc. (Whole Foods). ERF, which sold "EatRight"-branded cookies to Whole Foods for many years, argues that its former customer infringed on its trademark by selling a variety of foods under the "EatRight America" mark from 2010–2013. Whole Foods argues, and the district

court held, that ERF's suit is barred by the affirmative defenses of laches and acquiescence. Because disputed material facts establishing or defeating the defenses must be resolved, we vacate the district court's decision and remand for further proceedings.

I

ERF is a New Zealand company that sells organic foods. It has used the "EAT RIGHT" and "EATRIGHT" marks on its food products in the United States since 2001 and 2003, respectively. It owns registered trademarks for use of the "EATRIGHT" mark on several classes of goods, including certain types of snack foods.

Whole Foods Market Services, Inc., and Whole Foods Market Pacific Northwest, Inc., are subsidiaries of Whole Foods Market, Inc., which operates hundreds of grocery stores throughout North America. From 2004 through 2013, ERF sold a line of gluten-free cookies to Whole Foods.

Nutritional Excellence, LLC, is a health and nutrition company that once did business under the name "Eat Right America." In late 2009, Whole Foods contracted with Nutritional Excellence to use its patented Aggregate Nutrient Density Index (ANDI), a "food-scoring system" designed to communicate the nutritional value of foods to consumers. Whole Foods' agreement with Nutritional Excellence allowed it to display the ANDI scores of certain foods in its stores. Wherever an ANDI value was displayed,

Whole Foods was required to display the "EatRight America" mark.[1]

In early 2010, Whole Foods rolled out the ANDI system and launched an associated health-and-wellness program called "Health Starts Here" in all of its 289 stores. As part of "Health Starts Here," Whole Foods promoted Nutritional Excellence's "Eat Right America" diet and nutrition program. The company issued a press release about ANDI and "Health Starts Here" on January 20, 2010, and it featured both initiatives prominently on its website. The ANDI logo and the "EatRight America" mark were displayed on promotional materials, including chalkboards outside stores and signs inside stores. The mark also appeared alongside the ANDI scores of a variety of foods, including bulk foods, produce, and prepared foods.

In February or early March of 2010, ERF Managing Director Rebecca Douglas-Clifford, traveling from New Zealand, visited a Whole Foods store in San Francisco, California. She noticed the "EatRight America" mark on "books, DVDs and some promotional files," but did not observe the mark on any food products.[2]

---

[1] The parties' references to the various entities and marks at issue here are somewhat inconsistent. For the sake of clarity, we use the phrase "EatRight America" to refer to the disputed mark that was in use at Whole Foods, and we use capital letters to refer to registered marks. Where we quote from the record, we use the capitalization and spacing the parties use.

[2] According to Whole Foods, the "EatRight America" mark was used on foods throughout Whole Foods stores at this time. But Douglas-Clifford says the purpose of her visit was to discuss pricing with a Whole

In March 2010, Douglas-Clifford e-mailed Whole Foods counsel Chris Graff and stated that, "[o]n a recent trip to San Francisco I couldn't help but notice Whole Foods 'America's Healthiest Grocery Store' positioning and their alliance with Eat Right America . . . fantastic to see."[3]  In the same e-mail, Douglas-Clifford asked Graff to discuss with Whole Foods officials the possibility of "Whole Foods purchasing our EATRIGHT brand."

In November 2010, ERF became aware that Nutritional Excellence principal Kevin Leville was seeking to register the "EATRIGHT AMERICA" mark for "a variety of food products."  Douglas-Clifford investigated and determined that Nutritional Excellence was selling snack bars online, but she did not discover that it had licensed use of the "EatRight America" mark to Whole Foods.  ERF opposed Leville's registration before the Trademark Trial and Appeal Board (TTAB) from October 2011 through April 2013, arguing that use of the mark would confuse consumers.

In February or March of 2011, Douglas-Clifford visited two Whole Foods stores.  This time, she noticed the "EatRight America" mark on "a wide variety of food products."  But it was not until the following September that she contacted Graff to discuss what she described as Whole Foods' "infringement" of her company's trademark, and Graff told her to "look to Nutritional Excellence for a remedy."  Douglas-Clifford instead proposed that Graff

---

Foods representative, so she only visited the information desk and an in-store office and did not see the mark on food products during that visit.

[3] ERF asserts that Douglas-Clifford was referring to "the non-infringing and complementary use" of the mark she had seen on "CDs or DVDs," not to the use of the mark on food products, of which she was unaware at the time.

"approach Whole Foods to inquire whether Whole Food[s] would agree to purchase our rights in the brand EATRIGHT," and he told her he would talk to Whole Foods and "get back to" her.

In February 2012, ERF counsel James Martin began communicating with Graff about Whole Foods' alleged infringement.  On April 4, 2012, ERF sent Whole Foods a cease-and-desist letter asserting that ERF owned the rights to the "EATRIGHT" mark and Whole Foods had been using "a confusingly similar mark."

On April 20, 2012, Graff responded that Whole Foods' use of the mark was licensed by Nutritional Excellence, but that because Whole Foods had "no desire to become involved in a trademark dispute" with ERF, it would "agree to cease its use of the designation Eat Right America" by the end of the year.   The first line of the e-mail read "PRIVILEGED          SETTLEMENT          NEGOTIATIONS UNDER FED. R. EVID. § 408."

Graff and Martin corresponded or spoke on the phone about the matter multiple times in April and June 2012. They discussed different options for resolving the dispute, including the possibility of Whole Foods funding ERF's legal battle against Nutritional Excellence or acquiring ERF's brand.  Martin followed up with Graff in July and August.

On September 26, 2012, Martin sent Graff a letter reiterating ERF's objection to Whole Foods' use of "EatRight America" and stating that despite Whole Foods' assurances that the mark was no longer in use, it was "continuing to be used widely in Whole Foods stores."  The letter requested that Whole Foods "give serious consideration to acquisition of the EATRIGHT brand," or

"confirm that it will immediately cease all use of the infringing" mark.

On October 9, 2012, Graff told Martin via e-mail that Whole Foods was "not interested in pursuing a possible acquisition of your client's EATRIGHT brand at this time."

In November and December 2012, Douglas-Clifford corresponded with Whole Foods' Vice President of Business Development "regarding a potential brand purchase as a way to resolve outstanding infringement claims." In January 2013, Martin sent Graff a letter requesting that Whole Foods confirm that it had ceased using the "EatRight America" mark in stores. The next month, Graff repeated that Whole Foods was "not interested in pursuing" an acquisition of ERF's brand and that any claims ERF had regarding the mark should be directed at Nutritional Excellence.

In April 2013, ERF and Leville reached a settlement agreement under which Leville agreed to abandon his application for registration of the mark "EATRIGHT AMERICA" in the classes in which ERF's "EATRIGHT" mark was already registered. However, he would be permitted to use the mark "EAT RIGHT AMERICA," with "EAT RIGHT" spelled as two words.

The next month, ERF sent Whole Foods a letter stating that "[n]ow that [ERF] has successfully enforced [its] rights in the 'EATRIGHT' brand with respect to" Leville and Nutritional Excellence, it was "the appropriate time to resolve the outstanding issues with Whole Foods." It asserted that ERF had "lost substantial business" due to Whole Foods' actions and asked Whole Foods "to account for the damage and enter into negotiations for a final settlement of this dispute."

In December 2013, ERF brought suit alleging trademark infringement, false designation of origin, and unfair competition claims against Whole Foods in the Western District of Washington. Whole Foods moved for summary judgment, asserting the affirmative defenses of laches and acquiescence. ERF cross-moved for summary judgment.

The district court granted Whole Foods' motion and denied ERF's cross-motion for summary judgment. It found that ERF "knew, or in the exercise of reasonable diligence, should have known," that Whole Foods was using the "EatRight America" mark "in late 2009/early 2010," but that ERF allowed and even encouraged Whole Foods to use the mark for years. Therefore, it found that ERF's claim was barred by both laches and acquiescence. ERF timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We apply a hybrid standard of review to grants of summary judgment on the basis of laches. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002). "[C]ertain aspects of the district court's decision" are reviewed de novo, including "[w]hether laches is available as a potential defense to a particular kind of action" and "whether the district court inappropriately resolved any disputed material facts in reaching its decision." *Id.* at 920–21 (quotation omitted). But "the application of the laches doctrine to the facts" is reviewed for abuse of discretion. *Id.* at 921; *see also Internet Specialties W. v. Milon-Digiorgio Enters., Inc.*, 559 F.3d 985, 991 (9th Cir. 2009).

The application of the doctrine of acquiescence "is within the discretion of the trial court and also is reviewed for abuse of discretion." *Seller Agency Council, Inc. v.*

*Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010).

## III

The affirmative defense of laches "is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them." *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) (per curiam) (citations and internal quotation marks omitted). Finding that laches bars a trademark claim is appropriate where "the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) (quoting *Brookfield Commc'ns., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999)).

Although laches is distinct from a statute of limitation, we make laches determinations "with reference to the limitations period for the analogous action at law." *Jarrow Formulas Inc. v. Nutrition Now Inc.*, 304 F.3d 829, 835–36 (9th Cir. 2002). "If the plaintiff filed within that period, there is a strong presumption against laches. If the plaintiff filed outside that period, the presumption is reversed." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006). Here, the parties agree that the most analogous limitation period is Washington's three-year statute of limitation for trade name infringement. *See* Wash. Rev. Code Ann. § 4.16.080(2).

To establish that laches bars a claim, a defendant must "prove both an unreasonable delay by the plaintiff and prejudice to itself." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (quotation

omitted).  We address each prong of the laches analysis in turn.

## A

Determining whether a delay was unreasonable requires answering two questions:  how long was the delay, and what was the reason for it?  *Jarrow*, 304 F.3d at 838.

### 1

To measure the length of a delay, we start the clock "when the plaintiff knew (or should have known) of the allegedly infringing conduct," and we stop it when "the lawsuit in which the defendant seeks to invoke the laches defense" is initiated.  *Evergreen*, 697 F.3d at 1226.  ERF filed suit on December 3, 2013.  Thus, if it knew or should have known of Whole Foods' alleged infringement prior to December of 2010, the presumption is that laches applies.

The district court made conflicting statements about when ERF should have known about Whole Foods' alleged infringement.  Early in its order granting summary judgment, it stated that "the record demonstrates actual or constructive knowledge of the alleged infringement in early 2010."  But later it wrote that ERF "knew or, in the exercise of reasonable diligence, should have known that Defendants were using the allegedly infringed trademark in late 2009/early 2010."

Whole Foods rightly acknowledges that the district court erred in finding that ERF should have known of the alleged infringement in late 2009.  Whole Foods did not begin using the "EatRight America" mark in stores until January 20, 2010, so there was no infringement for ERF to be aware of in late 2009.  However, the evidence could support a finding

that ERF should have known about Whole Foods' use of the mark before December 2010.

ERF insists that it did not have *actual* knowledge of Whole Foods' alleged infringement until early 2011, but constructive knowledge is enough to start the laches evaluation period. *See, e.g.*, *Internet Specialties*, 559 F.3d at 990. On multiple occasions, we have held that laches barred an otherwise meritorious trademark or copyright claim because the plaintiff had constructive knowledge of potentially infringing activity outside the limitation period. *See, e.g.*, *Evergreen*, 697 F.3d at 1227 ("The fact that [the plaintiff] had the [defendant's] draft manual in his possession in 1999, regardless of whether he actually read it, demonstrates that he should have known of the infringement [then]."); *Miller*, 454 F.3d at 999 (holding that plaintiffs had constructive knowledge of infringement where they were shareholders in the defendants' organization, the defendants had "openly sold merchandise bearing the . . . mark" at performances for years, and one of the plaintiffs had attended performances where such merchandise was sold); *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983) ("Because plaintiff and defendant advertised in the same magazines and exhibited at the same trade fairs, plaintiff had ample opportunity to discover defendant's activities before defendant developed a substantial business.").

Here, ERF had an ongoing business relationship with Whole Foods, which publicized its "Health Starts Here" campaign and the "Eat Right America" nutrition program in a press release and on its website in January 2010. ERF's managing director visited a Whole Foods store in February or early March 2010, when the "EatRight America" mark was displayed throughout stores. Although she testified that

she did not see the mark used on food products, she admits that she saw it on "books, DVDs and some promotional files." And she clearly understood that "EatRight America" wasn't just the title of a book or DVD, because she referenced Whole Foods' "alliance with Eat Right America" and the Eat Right America "campaign[]" in e-mails to Whole Foods personnel. On March 22, 2010, she urged Whole Foods to order more of her cookies in conjunction with the campaign.

Furthermore, by November 2010, Douglas-Clifford was unquestionably aware of Nutritional Excellence's attempts to register the "EATRIGHT AMERICA" mark, and she knew Nutritional Excellence had a relationship with Whole Foods. When asked during sworn testimony when she "first put together" that the "EatRight America" mark was being used at Whole Foods beyond books and DVDs, Douglas-Clifford said she first "saw it with [her] own eyes" in early 2011, but she "saw a connection" when she discovered Nutritional Excellence's trademark application in "late 2010." Shortly thereafter, she was asked whether she "believe[d] [her] brand was possibly being damaged" in November of 2010 when "Eat Right branded products [were being] sold to Whole Foods Market by both sides," and she answered, "yes."

On this record, it was not an abuse of discretion for the district court to rule that ERF had constructive knowledge of Whole Foods' alleged infringement prior to December 2010. Therefore, the presumption is that laches applies. *See Tillamook*, 465 F.3d at 1108. But that presumption may be rebutted if ERF can show that its delay in suing was nonetheless reasonable.

To determine whether a delay is reasonable, we "look to the cause of the delay." *Evergreen*, 697 F.3d at 1227. Reasonable justifications for a delay include exhausting remedies through administrative processes, evaluating and preparing complicated claims, and determining "whether the scope of proposed infringement will justify the cost of litigation." *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)). "[D]elay is impermissible," on the other hand, "when its purpose or effect is to capitalize on the value of the alleged infringer's labor by determining whether the infringing conduct will be profitable." *Id.*

ERF argues that any delay on its part should be excused because it waited until December 2013 to file suit because it was trying to settle its claims against Whole Foods without litigation. Whole Foods argues that ERF was "attempt[ing] to cash in on [its] trademark registrations and sell its brand to a larger company, not to settle a dispute."

The district court agreed with Whole Foods. It understandably determined that ERF delayed filing suit "in an effort to foster an amicable relationship such that Defendants would purchase Plaintiff's brand" and that "[s]uch delay is not reasonable." In doing so, however, it seems to have violated the cardinal rule of summary judgment: that disputed issues of material fact must be resolved in favor of the non-moving party.[4] *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014) (per curiam).

---

[4] This principle applies even where, as here, the parties filed cross-motions for summary judgment. *See Brunozzi v. Cable Commc'ns Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). In those situations, "we review each motion . . . separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Id.* (quoting *Ctr. for Bio-Ethical*

Although the application of the laches doctrine to the facts is at the discretion of the trial judge, when it comes to determining what those facts are, the usual summary judgment standards apply. *See Beaty*, 306 F.3d at 920–21; *Jarrow*, 304 F.3d at 833–34; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 707–08 (5th Cir. 1994) ("[A]lthough the district court had discretion to grant laches on motion for summary judgment, it did not have discretion to circumvent the requirements of Rule 56(c) by resolving genuinely disputed issues of fact material to laches.").

Summary judgment should be granted where the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. On summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. While making that determination, the judge must view the evidence in the light most favorable to the non-moving party and make all reasonable inferences in favor of that party. *Tolan*, 134 S. Ct. at 1866–68.

Here, Whole Foods asserts that "at no point prior to [ERF] filing suit in December 2013 were [ERF] and Whole Foods engaged in settlement talks." But ERF presented evidence that it delayed filing suit because it was trying to

*Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

clarify its rights in the "EATRIGHT" mark and to resolve its claims against Whole Foods, one suggested resolution being an acquisition of its brand by Whole Foods.

According to the record, ERF began opposition proceedings against Leville before the TTAB in October 2011. In April 2012, ERF sent Whole Foods a cease-and-desist letter asserting that its use of the "EatRight America" mark was infringing and demanding that Whole Foods stop using the mark "on or in connection with food products."

Throughout 2012, ERF's and Whole Foods' lawyers communicated about the alleged infringement, and they discussed several ways of resolving ERF's complaints, including Whole Foods funding ERF's opposition proceeding against Leville or Whole Foods acquiring ERF's brand. Communications from both parties were marked as "PRIVILEGED SETTLEMENT NEGOTIATIONS" or "CONFIDENTIAL SETTLEMENT COMMUNICATION[S]."

In April 2013, ERF settled its opposition proceeding against Leville. The next month, it sent Whole Foods a letter claiming that it had "lost substantial business" due to Whole Foods' use of the "EatRight America" mark and demanding that Whole Foods "account for the damage and enter into negotiations for a final settlement of this dispute."

If the district court had credited ERF's evidence that it waited to file suit because it was attempting to resolve its claims against Whole Foods without litigation, it might have come to a different conclusion about the reasonableness of the delay. We have previously held that laches did not bar a claim where a plaintiff waited two years to file suit because "during that period the parties were actively seeking to resolve [the] matter out of court." *Toyota Motor Sales, U.S.A. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010); *see*

*also* Restatement (Third) of Unfair Competition § 31, cmt. c (Am. Law Inst. 2017) ("[R]easonable time consumed in objecting to the use and awaiting the defendant's response will not contribute to a finding of laches."). Similarly, here, the district court could determine that it was reasonable for ERF to "attempt to avoid the expense and inconvenience of a lawsuit" by pursuing alternatives to litigation and filing suit only after it was clear that Whole Foods was not amenable to such alternatives. *See Tabari*, 610 F.3d at 1183.

Whether ERF was trying to settle its claims with Whole Foods is a question of material fact because it goes to the reason for—and therefore the reasonableness of—ERF's delay. *See Anderson*, 477 U.S. at 248. If the delay was reasonable, laches does not bar ERF's suit.

By concluding, despite the evidence recounted above, that ERF delayed merely because it was trying to sell its brand, the district court impermissibly resolved a disputed question of material fact in favor of the moving party. Therefore, we vacate the district court's reasonableness finding and remand for further proceedings. On remand, the court should reevaluate the evidence in the light most favorable to the non-moving party—i.e., as if ERF delayed filing suit because it was trying to settle its claims against Whole Foods. The district court could still determine that the delay was unreasonable, but the court must proceed from the premise that ERF's account of why it waited to file suit is true.

We note also that because there are disputed issues of material fact, the district court did not abuse its discretion by denying ERF's cross-motion for summary judgment. Therefore, the district court's decision on that issue is affirmed.

B

Even where a defendant establishes that a plaintiff delayed unreasonably in filing suit, laches will not bar a claim unless that delay prejudiced the defendant. *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004). Two types of prejudice can give rise to laches: expectations-based prejudice and evidentiary prejudice.

1

Expectations-based prejudice exists where "a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Evergreen*, 697 F.3d at 1227 (quoting *Danjaq*, 263 F.3d at 955). A defendant can establish prejudice by demonstrating that during the plaintiff's delay, "it invested money to expand its business or entered into business transactions based on [its] presumed rights" in a disputed mark. *Miller*, 454 F.3d at 999. The defendant "may also prove prejudice if as a result of entering into such business transactions . . . it may incur liability for damages." *Id.* at 1000; *see also Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). Establishing undue prejudice requires that the defendant show "at least some reliance on the absence of a lawsuit." *Seller Agency*, 621 F.3d at 989.

The district court found that Whole Foods established expectations-based prejudice because "[d]uring the time period in question, Whole Foods invested a significant amount of time and money in, and heavily promoted, the ANDI® food-scoring system and Eat Right America diet and nutritional programs at its stores." It cited evidence showing that Whole Foods paid employees involved with the ANDI program salaries of almost $1.6 million and that

Whole Foods opened more than fifty new stores, all of which "trained employees on the food-scoring system and Eat Right America programs, and generated, printed, and displayed signage promoting and explaining the scores and programs."

This type of evidence can support a finding of expectations-based prejudice. *See Miller*, 454 F.3d at 1000. However, the prejudice inquiry is concerned with actions a defendant took during the plaintiff's delay in bringing suit—not all the actions it took in relation to the use of a mark. *See id.* at 999 ("[Defendant] must also demonstrate that it has been prejudiced *by the delay*.") (emphasis added); *see also Whittaker*, 736 F.2d at 1347 (finding prejudice where a defendant incurred potential liability because of the plaintiff's "failure to take prompt action"). Thus, only expenditures made after a plaintiff "knew or should have known about the potential claim" will support a finding of expectations-based prejudice. *See Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000).

Here, the district court treated "the time period in question" as 2009–2012, even though Whole Foods did not start using the "EatRight America" mark in stores until January 20, 2010. As noted above, the district court found that ERF should have known about Whole Foods' alleged infringement "in late 2009/early 2010." And Whole Foods' evidence regarding spending associated with the "EatRight America" mark covers 2009–2012. It does not differentiate in any way between expenditures made before and after Whole Foods actually started using the mark in stores. Thus, the evidence the district court relied on to find expectations-based prejudice included actions Whole Foods took before the mark was even in stores, and certainly before ERF could have filed suit.

"A district court abuses its discretion if it . . . rests its decision on a clearly erroneous finding of material fact." *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011) (quotation omitted). The district court's finding that ERF should have known of Whole Foods' alleged infringement in late 2009 was clearly erroneous. Its finding that Whole Foods suffered expectations-based prejudice rests on that error. Therefore, we vacate the district court's prejudice finding and remand for further factfinding. On remand, the evidence of expectations-based prejudice it considers must be limited to actions Whole Foods took during the period that ERF delayed filing suit.

2

Evidentiary prejudice exists where a plaintiff's delay has led to "lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Evergreen*, 697 F.3d at 1227 (quoting *Danjaq*, 263 F.3d at 955).

The district court made no findings with regard to evidentiary prejudice. Whole Foods insists that it did suffer evidentiary prejudice and suggests that we affirm the district court's laches finding on this ground. Whole Foods presented evidence that its employees could not remember the names of individuals who worked on the 2009 licensing agreement with Nutritional Excellence, that Whole Foods' "'main point of contact' for the agreement had since moved on" from the company, and that "ANDI and Eat Right America signage was removed and is no longer accessible."

However, Whole Foods itself is responsible for removing the signs, which were taken out of stores after litigation was reasonably foreseeable. Whole Foods asserts only that its "main point of contact" has moved on from the company, not that he or she is unavailable to testify. *See*

*Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir. 1979) ("The mere assertion that these persons are not presently with the company is insufficient to support a finding of prejudice. [The defendant] must also show that they are unavailable to testify."). And it has failed to "state exactly what particular prejudice it [would] suffer[] from the absence of" the witnesses and evidence it claims are unavailable. *See Beaty*, 306 F.3d at 928 (quoting *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992)).

Because the record evidence of evidentiary prejudice is thin, the application of the laches doctrine is within the discretion of the district court, *id.* at 921, and the district court made no findings whatsoever on the matter, we decline to affirm the district court's prejudice finding on the alternative ground of evidentiary prejudice.

## IV

While laches bars suits by those who have passively slept on their rights, the doctrine of acquiescence "limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent [to use of a mark] to another." *Seller Agency*, 621 F.3d at 988. Establishing acquiescence requires a defendant to show that "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* at 989.

Because acquiescence has two elements in common with laches, the flaws in the district court's unreasonable delay and prejudice analyses also affect its acquiescence analysis. Those issues alone would be enough for us to vacate the acquiescence finding and remand for further proceedings.

And there is an additional problem. Acquiescence is distinct from laches because it requires an affirmative representation by the plaintiff that it will not assert a claim. *Id.* But the prejudice analysis is slightly different as well: "in the case of laches, undue prejudice requires at least some reliance on the absence of a lawsuit. Relatedly, prejudice in the context of acquiescence inherently must involve reliance on the senior user's affirmative act or deed, and such reliance must be reasonable." *Id.* at 989–90 (internal citations omitted). When evaluating the reasonableness of any reliance, "a district court must examine both the content of the affirmative act and the context in which that act was performed." *Id.* at 990.

In *Seller Agency*, we vacated and remanded a finding of acquiescence because although the district court referred to the proper elements of acquiescence, it "did not make factual findings either as to the scope of Appellants' active representations or as to the extent and reasonableness of Appellees' reliance on those representations." *Id.*

Similarly, here, the district court described the elements of acquiescence correctly, but did not make the necessary factual findings. It did find that ERF's actions between March 2010 and April 2012 constituted "affirmative conduct by Plaintiff inducing Whole Foods to believe that it was welcome, even encouraged, to engage in the Eat Right America campaign." But it did not make factual findings regarding "the extent and reasonableness" of Whole Foods' reliance on those actions. Instead, it conflated reliance with prejudice, stating that ERF's "conduct prejudiced Defendants. Thus, the Court concludes that Defendants relied on Plaintiff's conduct to its detriment."

Under *Seller Agency*, the existence of prejudice does not in and of itself establish reliance. *See id.* Reliance is a

separate but necessary component of the prejudice analysis, and the district court must determine whether the defendant relied on the plaintiff's active representations, to what extent it relied on those representations, and whether that reliance was reasonable. *See id.* That analysis is missing here. Therefore, we vacate the district court's acquiescence finding and remand for further proceedings. If the district court determines on remand that ERF delayed unreasonably in filing suit and this delay prejudiced Whole Foods, it must consider the extent and reasonableness of Whole Foods' reliance on ERF's affirmative representations before it reaches a finding on acquiescence.

Each party shall bear its own costs.

**AFFIRMED** in part; **VACATED** in part; and **REMANDED** with instructions.